UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In Re:<br><br>KENNETH M. FOSTER,<br><br>Debtor. | Chapter 13<br>Case No. 14-20991 |
| KENNETH M. FOSTER,<br><br>Plaintiff,<br><br>v.<br><br>DIANE E. BURNS,<br><br>Defendant. | Adversary Proceeding<br>Case No. 16-02033 |

## MEMORANDUM OF DECISION

Debtor Kenneth M. Foster alleges that his ex-wife, Diane E. Burns (f/k/a Diane Foster), willfully violated 11 U.S.C. §362(a)[1] by seeking to enforce and modify a divorce judgment without first obtaining relief from the automatic stay. An evidentiary hearing took place on March 1, 2017, during which Mr. Foster was the sole witness and four exhibits were admitted without objection. At that hearing, counsel for Ms. Burns moved for dismissal, which motion I took under advisement. Mr. Foster and Ms. Burns filed post-trial briefs, and Mr. Foster subsequently submitted a reply brief. Upon review of the papers filed by the parties, and consideration of the evidence and testimony offered at trial, and for the reasons set forth below,

---

[1] All references to the "Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, et seq.

judgment will enter against Ms. Burns and in favor of Mr. Foster on the stay violation, and Ms. Burns's oral motion to dismiss will be denied.

## I.     Jurisdiction and Venue.

This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a) and 1334 and the United States District Court for the District of Maine Local Rule 83.6(a). The parties consented to this Court entering final judgment in this adversary. Venue here is appropriate pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     Background.

Mr. Foster and Ms. Burns were divorced pursuant to a divorce judgment (the "Divorce Judgment") entered on July 1, 2014 by the Maine District Court, Portland Division (the "State Court").[2] The Divorce Judgment set aside to Ms. Burns her ownership interest in non-marital real estate located at 50th Street, Unit #11 Ocean City, Maryland.[3] Case No. 14-20991, Proof of Claim 5-1, Divorce Judgment at ¶ 2. The Real Property is subject to a mortgage which secures a note in the original principal amount of $276,000 signed by both Mr. Foster and Ms. Burns (the "Note").[4] Id. at ¶ 7. With respect to the Note, the State Court ordered "that this Note is marital debt and the Note and its remaining balance of $258,129.62 as of May 30, 2014 is set aside to Husband and Wife, equally." Id. In addition, the State Court found that during eleven of the nineteen years Mr. Foster and Ms. Burns were married, Ms. Burns accrued benefits under a vested pension held in her name (the "Pension"). Id. at ¶ 5. The State Court ordered Ms. Burns

---

[2] Neither party offered the Divorce Judgment into evidence or attached it to papers filed in this adversary proceeding. Ms. Burns did, however, attach a copy of it to Proof of Claim No. 5-1 (the "Proof of Claim") in the underlying bankruptcy case, Case No. 14-20991. Judicial notice is hereby taken of the Proof of Claim, as well as other documents filed in Case No. 14-20991, as noted herein and pursuant to F.R.E. 201(b) and (c).

[3] Mr. Foster did not have an ownership interest in the property and Ms. Burns owns it jointly with her sisters. For ease of reference, Ms. Burns's interest in that property will be referred to in this decision as the "Real Property".

[4] Mr. Foster and Ms. Burns borrowed these funds in connection with a fledgling restaurant venture.

2

to transfer to Mr. Foster by qualified domestic relations order half of the Pension benefits accrued by her during that period.

Over five months later, Mr. Foster commenced the underlying chapter 13 case by filing a voluntary petition for relief and various schedules. On Schedule E, he listed a domestic support obligation to Ms. Burns of $3,164, of which $600 was entitled to priority treatment. On the same day, he filed a proposed chapter 13 plan (Case No. 14-20991, Docket Entry ("D.E.") 2) (the "Chapter 13 Plan"), listing one domestic support obligation to Ms. Burns in the amount of $600.00. The Chapter 13 Plan further proposed to discharge as a general unsecured claim, "certain non-spousal support debts, stemming from division of marital assets, including an obligation to pay the mortgage on a condominium owner [sic] by her family members." *See* Chapter 13 Plan, D.E. 2 at ¶ 10(F).

Ms. Burns filed the Proof of Claim on March 13, 2015, alleging a general, unsecured claim in the amount of $154,838.94 and a $600.00 domestic support obligation entitled to priority treatment. Shortly thereafter, she objected to confirmation of the Chapter 13 Plan on the grounds that, *inter alia*, it was filed in bad faith. Following an evidentiary hearing on October 27, 2015, a follow-up hearing on November 4, 2015 and briefing by the parties, the Chapter 13 Plan was ultimately confirmed over Ms. Burns's objection.

Eleven months later, Ms. Burns's divorce counsel filed three motions in the State Court.[5] The first (the "Motion to Enforce") sought an order enforcing the Divorce Judgment and directing Mr. Foster to pay that portion of the Note allocated to him by the Divorce Judgment. The second (the "Motion for Omitted Property") requested that the State Court re-impose an obligation on Mr. Foster to share the marital debt owed on the Note which the Chapter 13 Plan

---

[5] Copies of these motions were contained in Exhibit 3-1.

3

proposes to, in her view, inequitably discharge.[6] Finally, Ms. Burns asked the State Court to modify the Divorce Judgment (the "Motion to Modify") to accomplish the same result she seeks in the Motion for Omitted Property. Additionally, in light of the effects of Mr. Foster's confirmed Chapter 13 Plan, she requested that her spousal support be increased and that she no longer be required to pay over to Mr. Foster a portion of her Pension.[7]

---

[6] The Motion for Omitted Property stated in part, as follows:

> 10. Because of the bankruptcy, the final divorce decree failed to set apart or divide the marital property, the debt on the Maryland home, over which the court had jurisdiction.
>
> 11. Justice requires that the Court set aside or divide the constructively omitted property between the parties because the Judgment is only being circumvented and creating an unforeseen outcome—if ordered payments to [Ms. Burns] are not already marital payments required by all applicable laws.
>
> 12. In the alternative, the Court should redivide the marital property to be equitable taking into consideration the slap from the Bankruptcy Court empowering [Mr. Foster] to thumb his nose at the State's order to share in marital debt.
>
> WHEREFORE, in the alternative, [Ms. Burns] requests that this Court enter a judgment to set aside or divide the omitted property, the debt on the Maryland home, under 19-A M.R.S. § 953 in the Divorce Judgment dated July 1, 2014 and because [Mr. Foster] feels he is empowered to ignore the final divorce decree to set apart or divide martial [sic] property over which the court had jurisdiction.

Exh. 3-1 at pp. 3-4.

[7] The Motion to Modify provided in relevant part:

> 14. If the debt on the Maryland home is not effectively set aside to [Mr. Foster] under 19-A M.R.S. § 953, then the Divorce Judgment is necessarily unfair.
>
> 15. Because the Divorce Judgment in this context would be unfair, the Court must modify the Divorce Judgment to set aside or divide the omitted or constructively [sic] property between the parties as justice may require.
>
> 16. In addition, the Court should reset spousal support to accurately and fairly take into account the circumstances either created by the Bankruptcy Court or by [Mr. Foster] himself, see 19-A MRS § 952.
>
> 17. Because of any resulting burden shift in paying marital debt, the Court should rightly void any set aside of [Ms. Burns's] pension or retirement to [Mr. Foster]; all in the interest of fairness and equity.
>
> WHEREFORE, if this unpaid debt on the Maryland property is deemed to have been omitted or constructive omitted, [Ms. Burns] requests that this Court Modify this judgment to recalculate the division of assets and set aside or divide the non-constructively omitted property, modify spousal support upward, and eliminate [Mr. Foster's] share of [Ms. Burns's] pension between the parties with respect to the Divorce Judgment dated July 1, 2014.

Exh. 3-1 at pp. 4-5.

4

Two days after Ms. Burns filed the Motion to Enforce, the Motion for Omitted Property and the Motion to Modify (collectively, the "State Court Motions"), Mr. Foster commenced this adversary proceeding. In his complaint seeking actual and punitive damages, Mr. Foster alleged that the State Court Motions constituted a willful violation of the automatic stay because they were designed to skirt the protections afforded to Mr. Foster by the Code and the confirmed Chapter 13 Plan. Mr. Foster also took action in the State Court where, through his divorce counsel Mr. J. Kimball Hobbs, Esq., he filed an objection to the State Court Motions asserting that, in addition to certain infirmities under applicable non-bankruptcy law, the motions violated the automatic stay. Exh. 3-2.

On or about November 7, 2016, Ms. Burns withdrew the Motion to Enforce and filed an Amended Motion to Modify Divorce Judgment Dated July 1, 2014 Regarding Spousal Support and Property (the "Amended Motion to Modify"), which is substantively similar to the original Motion to Modify. Exh. 3-2 and 3-3. The prayer for relief in the Amended Motion to Modify seeks to modify the spousal support and deny Mr. Foster any share in Ms. Burns's Pension. Exh. 3-3. As was the case in the original Motion to Modify, the relief sought in the Amended Motion to Modify is premised on the argument that the modifications are necessary to address "any resulting burden shift in paying marital debt" arising from the proceedings in this Court. Id.

At trial, Mr. Foster testified that "several motions" had been dismissed but that the Amended Motion to Modify, or some variation thereof, was in the discovery phase. He further testified that Ms. Burns is seeking to extend his alimony obligations to 20 years at $1,000 per month and that this proposed modification, if adopted by the State Court, would result in a

spousal support award equal to the Note obligations apportioned to Mr. Foster in the Divorce Judgment.[8]

Both after Mr. Foster submitted his case and again at the conclusion of the hearing, counsel for Ms. Burns orally moved to dismiss the Adversary Proceeding on the grounds that withdrawal of certain of the motions filed in State Court mooted the automatic stay violation action. The oral motion was taken under advisement pending submission of the post-trial briefs.

### III. Legal Standard.

The automatic stay is one of the most fundamental and important protections afforded by the Bankruptcy Code. *See*, In re Nelson, 335 B.R. 740, 748 (Bankr. D. Kan. 2004) (". . . the automatic stay is the lynchpin of the Bankruptcy Code"). *See also,* In re Harris, 310 B.R. 395, 397-398 (Bankr. E.D. Wis. 2004). "The automatic stay . . . should be broadly construed in favor of the Debtor and exceptions thereto should be applied narrowly." Gazzo v. Ruff (In re Gazzo), 505 B.R. 28, 35 (Bankr. D. Col. 2014). The list of acts stayed by the commencement of a bankruptcy case include:

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
>
> . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the cases under this title;

---

[8] At $1,000 per month for 20 years, the proposed modified spousal support would equal $240,000. Ms. Burns was not called to testify and her counsel did not challenge Mr. Foster's testimony regarding the amount and nature of the spousal support sought by Ms. Burns. Since neither party offered evidence showing the current balance outstanding on Mr. Foster's obligations under the Note, a dollar-for-dollar correlation between the proposed modification and the Note balance has not been clearly established. In the Chapter 13 Plan, Mr. Foster stated that the outstanding balance on the Note as of that date, was $254,277.00. Ms. Burns's Proof of Claim asserted a claim against Mr. Foster's estate in the amount of $155,438.94, which figure apparently included the obligations under the Note and the $600.00 domestic support obligation.

> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor . . .

§ 362(a)(2), (6) and (7).

A creditor willfully violating the automatic stay is liable for actual damages and, in appropriate circumstances, punitive damages. § 362(k). "A debtor seeking damages under [§ 362(k)] bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred; (2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 578 (1st Cir. BAP 2012) (*citing* In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). *See also*, Witkowski v. Knight (In re Witkowski), 523 B.R. 291, 297 (1st Cir. B.A.P. 2014). Willfulness requires only that a creditor with knowledge of the stay acted intentionally in violation of the stay. Fleet Mortg. Grp., Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 1999). A mistaken understanding of the law is not a defense to willfulness.

> . . . A good faith belief in a right to the property is not relevant to a determination whether the violation was willful. A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation. In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.

Fleet Mortg. Grp., 196 F.3d at 268-269 [internal citations omitted].

### IV. Analysis

Addressing the initial question of whether Ms. Burns had actual knowledge of Mr. Foster's bankruptcy is easy. In light of her filing of a proof of claim in the underlying case and her vigorous opposition to the confirmation of the Chapter 13 Plan (including her testimony at the October 27, 2015 evidentiary hearing on confirmation), there can be no question that she was

well aware of the pending bankruptcy case prior to filing the State Court Motions. Further, there is no doubt that Ms. Burns intended to seek a State Court order enforcing the Divorce Judgment, eliminating her Pension obligation to Mr. Foster and modifying spousal support. The only remaining questions are whether the filing of the State Court Motions constituted violations of the automatic stay, and, if so, the extent to which actual and punitive damages should be awarded.

A.      *Whether Ms. Burns Violated the Automatic Stay by Filing the State Court Motions*

While it is not clear which matters remain pending before the State Court, it is undisputed that Ms. Burns caused the State Court Motions to be filed and that, after withdrawing at least the Motion to Enforce and maybe others, she continues to seek an increase in spousal support without obtaining relief from the automatic stay. The State Court Motions seek three forms of relief explicitly designed to counteract the combined effect of the confirmed Chapter 13 Plan and the Debtor's eventual discharge. For the reasons set forth below, I find that all three State Court Motions and the Motion to Modify violated the automatic stay.

      i.      <u>The Motion to Enforce</u>

The Motion to Enforce expressly violated § 362(a)(2) by seeking an order compelling Mr. Foster to make payments on the Note in accordance with the Divorce Judgment. In filing the motion, Ms. Burns erroneously relied upon the Maine Supreme Judicial Court's ruling in <u>Collins v. Collins</u>, 136 A.3d 708 (Me. 2016) that §523(a)(15), which specifically exempts from a chapter 7 discharge certain non-domestic support obligations to a former spouse imposed in connection with a divorce judgment. <u>Id</u>. at 712-714. Ms. Burns eventually withdrew the Motion to Enforce after Mr. Foster filed the complaint commencing this adversary proceeding and an

8

objection to the State Court Motions; both of which addressed the inapplicability of the <u>Collins</u> decision in the context of this chapter 13 case.

Ms. Burns argues that withdrawal of the Motion to Enforce mooted Mr. Foster's stay violation claim. That argument, however, ignores the distinction between liability and damages. The mere act of filing the Motion to Enforce violates § 362(a)(2) and (6). Prompt withdrawal may eliminate or reduce any resulting damage, but it does not undo or otherwise recharacterize the act such that a violation never occurred. While the withdrawal of the Motion to Enforce may be pertinent to the issue of damages, it is irrelevant to the discussion of whether a violation occurred in the first place.

    ii.    <u>The Motion for Omitted Property</u>

Mr. Foster's testimony and the statements made by counsel for both parties during oral argument and in the post-trial briefs indicate that the Motion to Modify—or some version of it—may be the only matter still pending before the State Court.[9] According to the text of the (i) Motion to Withdraw Motion to Enforce Judgment and Motion to Amend Motion to Modify and (ii) the Defendant's Reply to Plaintiff's Opposition to Motion to Enforce, Motion for Omitted Property, and Motion to Modify only the Motion to Enforce was withdrawn, so the record may be incomplete as to the current procedural posture of the Motion for Omitted Property. Regardless, the parties do not dispute that this motion was, in fact, filed. For the reasons discussed above, whether or not the Motion for Omitted Property was withdrawn is immaterial to the determination of whether Ms. Burns violated the automatic stay.

---

[9] Mr. Foster's testimony at the March 1, 2017 hearing, coupled with statements by counsel for both parties in their papers, suggested that all three State Court Motions may have been withdrawn and that a fourth motion may have been filed. Regardless of the confusion as to how many motions are presently pending in State Court, it seems that Ms. Burns is primarily seeking an adjustment of the spousal support. It is not readily apparent whether Ms. Burns also seeks to void that portion of the Divorce Judgment awarding Mr. Foster a portion of her Pension.

9

The question of whether the Motion for Omitted Property violates the automatic stay turns, instead, on the nature of the relief sought by Ms. Burns in that motion. Through it, Ms. Burns seeks a state court order re-establishing Mr. Foster's obligation under the Divorce Judgment to repay an equal portion of the Note; an obligation which would be discharged by the successful completion of the Chapter 13 Plan. Ms. Burns argues that the relief is necessary in order to restore equity among the parties "taking into consideration the slap from the Bankruptcy Court empowering Mr. Foster to thumb his nose at the State's order to share in marital debt." In this respect, the Motion for Omitted Property is substantively no different than the Motion to Enforce because its express purpose is to compel Mr. Foster to partially repay the Note. Accordingly, the filing of that motion violated § 362(a)(6) by seeking to collect a debt (that portion of the Note obligation allocated to Mr. Foster under the Divorce Judgment) which arose prior to the commencement of Mr. Foster's bankruptcy case.

    iii.    <u>The Motions to Modify</u>

Finally, in both the Motion to Modify and the Amended Motion to Modify, Ms. Burns again requests that the State Court require Mr. Foster to repay an equal portion of the Note to correct the unfairness resulting from Mr. Foster's bankruptcy case. To the extent that Ms. Burns renews her request for the relief sought in the Motion for Omitted Property, the motions to modify violate the automatic stay for the reasons set forth above. With respect to the Pension, Ms. Burns seeks, in violation of § 362(a)(7), to set off against Mr. Foster's interest in the Pension, his dischargeable obligation under the Note. The Divorce Judgment explicitly directed Ms. Burns to transfer to the Plaintiff by a qualified domestic relations order half of the pension benefit accrued during the marriage. While it is not clear whether Ms. Burns has yet taken the steps necessary to effectuate that transfer, entry of the Divorce Judgment alone was sufficient to

create an obligation due to Mr. Foster from Ms. Burns. By explicitly asking the State Court to eliminate her obligation to Mr. Foster in light of the discharged property settlement, Ms. Burns is seeking to set that liability off against her discharged claim in violation of § 362(a)(7).[10] The motions to modify, therefore, violate the automatic stay simply by virtue of seeking these two forms of relief.

The motions to modify seek yet another form of relief, however, and that is an increase in spousal support awarded to Ms. Burns. Whether or not the motions to modify *also* violate the automatic stay by virtue of this final form of relief is a closer question. As counsel for Ms. Burns correctly states, the automatic stay does not extend to the commencement or continuation of a proceeding against the debtor for the establishment or modification of an order for domestic support obligations. § 362(b)(2)(A)(ii). Mr. Foster asserts that where the modification of domestic support obligations is a thinly veiled attempt to recover a discharged property division, an ex-spouse is not shielded by the exception in § 362(b)(2)(A)(ii).

Few courts have considered whether, notwithstanding the exception in § 362(b)(2)(A)(ii), a creditor must first seek relief from the automatic stay before seeking modification of a domestic support obligation premised solely upon nonpayment on a dischargeable debt arising out of a property settlement. While doing so may be prudent, especially in the highly-charged atmosphere of domestic relations litigation, it may, in some circumstances, not be necessary. At least one court, however, has held that a motion seeking adjustment of a domestic support obligation as a result of a debtor's failure to pay in accordance with property division provisions in a divorce judgment constitutes a setoff in violation of § 362(a)(7). In re Harris, 310 B.R. at 399 ("Construing the exception of § 362(b)(2)(B)(ii) [sic] narrowly, and given Chet's motivation

---

[10] Viewed another way, the motions to modify also violate § 362(a)(2) by seeking to enforce the Note obligations allocated to Mr. Foster under the Divorce Judgment against Mr. Foster's interest in the Pension.

11

to recover equity he lost in a property division, without seeking relief from the automatic stay or a determination that the Debtor's obligation should not be discharged under § 523(a)(15) of the Bankruptcy Code), Chet's Motion to reduce the maintenance he owed the Debtor violated the automatic stay.").

The reasoning in <u>Harris</u> is compelling. Creditors should not be permitted to use the spousal support modification exception for the sole purpose of recharacterizing an otherwise dischargeable property division as a nondischargeable domestic support obligation. While an ex-spouse's bankruptcy filing may be a proper and relevant factor in adjusting a spousal support award, a dollar-for-dollar modification premised solely upon the discharge of a marital debt allocated to the debtor under a divorce judgment would more closely resemble an impermissible setoff than a modification falling within the spirit § 362(b)(2)(A)(ii). *See, e.g.* <u>In re Marriage of Trickey</u>, 589 N.W.2d 753, 757 (Iowa Ct. App. 1998) (finding, in the context of a discharge injunction violation, that "[i]f the modification is essentially a reinstatement of the property settlement under the guise of alimony, the modification violates section 524 and is not permitted").

In this case, the Court was not presented with sufficient evidence to determine that Ms. Burns's request for a modification of the spousal support fell outside the scope of the § 362(b)(2)(A)(ii) exception. Certainly, both the timing of the Motion to Modify—on the heels of an unsuccessful objection to confirmation—and the language contained in all three State Court Motions and the Amended Motion to Modify are troubling. However, neither the original Motion to Modify, nor the Amended Motion to Modify, state a specific demand for support. Moreover, as noted above in footnote 9, statements by counsel for both parties, and the testimony by Mr. Foster, painted a confusing picture as to the current procedural posture of the State Court

proceedings. The record does not clearly indicate what motions are currently before the State Court, the grounds, if any, Ms. Burns has offered to that court in support of her alleged request for a modification of spousal support, or the amount of spousal support she seeks. In other words, Mr. Foster did not plainly establish the nexus between the Note obligation the Chapter 13 Plan proposes to discharge and Ms. Burns's request for a modification of support. On this evidentiary record, therefore, I cannot determine either that the initial request for a modification, or the proceedings currently pending before the State Court, exceed the scope of the spousal support modification exception to the automatic stay.

However, as noted above, the motions to modify seek other relief, a setoff against Mr. Foster's interest in the Pension for example, which infringes on Mr. Foster's rights under §362(a). Thus, through all three of the State Court Motions as well as the Amended Motion to Modify, Ms. Burns, in one fashion or another, overstepped and willfully violated the automatic stay.

B.        *Whether Mr. Foster is Entitled to an Award of Damages*

Having determined that Ms. Burns willfully violated the automatic stay by filing the State Court Motions and the Amended Motion to Modify, I must now turn to the issue of damages. The Code provides that, ". . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). "Courts within the First Circuit have concluded that the words 'shall recover' indicate that 'Congress intended that the award of actual damages, costs and attorney's fees be *mandatory* upon a finding of willful violation of the stay.'" Vázquez Laboy v. Doral Mortgage Corp. (In re Vázquez Laboy), 416 B.R. 325, 332 (1st Cir. BAP 2009) (quoting In re Heghmann v. Indorf (In re Heghmann), 316

13

B.R. 395, 405 n. 9 (1st Cir. BAP 2004) (emphasis in original), *rev'd in part and vacated in part*, 647 F.3d 367 (1st Cir. 2011).

Notwithstanding this mandate, a debtor bears the burden of establishing by a preponderance of the evidence that he or she suffered actual damages. Duby v. United States (In re Duby), 451 B.R. 664, 670 (1st Cir. BAP 2011).

> . . . For § 362(h) purposes, actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount. *See* In re Sumter, 171 B.R. 835, 844 (Bankr. N.D. Ill. 1994). Once a party has proven that he has been damaged, he needs to show the amount of damages with reasonable certainty. Id. (citing Doe v. United States, 976 F.2d 1071 (7th Cir. 1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993)). A damages award cannot be based on mere speculation, guess or conjecture. Id. (citing Adams Apple Distrib. Co. v. Papeleras Reunidas, S. A., 773 F.2d 925, 930 (7th Cir. 1985)).

Heghmann, 316 B.R. at 405.

Mr. Foster seeks an award of actual damages compensating him for medical costs relating to emotional distress as well as attorney fees and costs incurred both in defending against the State Court actions and in prosecuting this adversary proceeding. However, at trial he presented scant credible evidence of damages he incurred as a result of the Ms. Burns's offending actions.[11] He did not offer billing statements, time compilations, invoices, spreadsheets, time

---

[11] During the trial, counsel for Mr. Foster asserted for the first time that in accordance with an allegedly "long standing practice" in this jurisdiction, the March 1, 2017 evidentiary hearing should be limited to the question of liability and that a subsequent hearing on damages would convene only if he successfully established that Ms. Burns violated the automatic stay. This Court disagrees. His view of the trial structure directly conflicts with the December 21, 2016 hearing on the Order to Appear and Show Cause against Plaintiff For Failure to file a Pre-Trial Scheduling Order (audio at DE 9), the Joint Pretrial Statement/Pretrial Order dated December 22, 2016 (DE 10), the Order Setting Date for Trial and Related Deadlines dated January 6, 2017 (DE 13), the Plaintiff's Motion to Reconsider the Court's February 16, 2017 Order excluding witnesses and exhibits, ¶¶ 4, 8 (DE 15), and the parties' witness and exhibit lists (DEs 16, 18 and 19). Those pretrial hearings, orders and pleadings made it apparent that the trial was set for March 1, 2017 at 1:30 pm and that there was no request for a bifurcated hearing. Further, following the January 6, 2017 Order Setting Date for Trial and Related Deadlines which established the March 1st trial date, Mr. Foster filed two witness and exhibit lists and both indicated that Mr. Foster would "testify as to Communications with defendant, filings made by Defendant, state court proceedings, legal fees incurred, damages suffered . . ." (emphasis added). DE 16 and 19.

sheets or the like.[12] He did not call as witnesses either his state court or bankruptcy counsel. For the most part, his recollection was vague or general as to the amount of fees or expenses he incurred in connection with the violative aspects of the State Court Motions.[13] However, in one area on direct examination, Mr. Foster testified:

> Mr. Logan: And can you tell me whether you have incurred any costs or liabilities as a result of Ms. Burns's state court filings?
>
> Mr. Foster: Absolutely.
>
> Mr. Logan: What types of costs and liabilities?
>
> Mr. Foster: I now have two attorneys that are working on this case, one obviously here today in front of us and Mr. Hobbs, I had to rehire him for that to handle the motions in court and stuff for me.
>
> Mr. Logan: And do you know approximately how much Mr. Hobbs has incurred?
>
> Mr. Foster: It's well over $3,000 already and that, and actually when I say that that was just to defend the first three motions that were dismissed there was still ongoing, we're in the middle of discovery right now and I mean the clock is running so I really expect this to exceed $10,000 easily.

Unofficial transcription from audio file of March 1, 2017 trial. DE 22 11:33 – 12:28.

This testimony was uncontroverted; Ms. Burns did not challenge it on cross examination. Though Mr. Foster's damages might be higher ("so I really expect this to exceed $10,000 easily"), reaching that conclusion would require speculation, guesswork or conjecture. No guesswork is necessary to determine that Mr. Foster suffered at least $3,000 in actual in

---

[12] Although counsel for Mr. Foster attempted to introduce into evidence an affidavit allegedly prepared by Mr. Hobbs with respect to the fees he billed in connection with the State Court Motions, the affidavit (which referred to an exhibit containing billing details but which exhibit was not attached to the affidavit) was excluded from evidence on hearsay grounds.

[13] This latter point is significant because Mr. Foster testified that Mr. Hobbs has represented Mr. Foster in State Court during the underlying bankruptcy case with respect to two matters; the State Court Motions and Mr. Foster's lawsuit against his former landlord.

connection with Mr. Hobbs's defense of the State Court Motions. I can reach that decision with reasonable certainty based on the evidence adduced at trial.[14]

That is not so for the damage claims relating to Mr. Foster's bankruptcy fees and costs or for his medical expenses. Though the record is clear that Mr. Foster engaged bankruptcy counsel to represent him in connection with this adversary proceeding, it is devoid of any admissible evidence as to the hourly rate of Mr. Foster's bankruptcy counsel or the specific number of hours spent by him in connection with the State Court Motions. Lacking any concrete evidence upon which to calculate the amount of fees and costs billed by Mr. Foster's bankruptcy counsel, I am incapable of awarding damages in connection with these proceedings.

Also, although Mr. Foster testified that Ms. Burns's actions in connection with the State Court Motions exacerbated the anxiety and depression from which he suffers, resulting in

---

[14] Other testimony by Mr. Foster appeared to initially support State Court attorneys' fee damages of higher amounts. For example:

| | | |
|---|---|---|
| Mr. Logan: | Do you know what Mr. Hobbs' hourly rate is? |
| Mr. Foster: | $325, I believe it is? |
| Mr. Logan: | Okay and do you have any . . . based on your interactions with him, based on your review of this affidavit, do you have any approximate idea of how many hours he put into defending these motions? |
| Mr. Foster: | Umm, definitely like, over 10, 15 hours |
| Mr. Hatem: | Move to strike, your Honor. The question calls for a "yes" or "no". |
| Judge Cary: | I'm going to . . . I'm going to grant . . . I'm going to grant the motion to strike. Your answer is "yes". |
| Mr. Logan: | Approximately how many hours do you believe he has put into defending this? |
| Mr. Foster: | Twelve. |

Unofficial transcription from audio file of March 1, 2017 trial. DE 22 37:27 – 38:14.

I did not find the testimony that Mr. Hobbs spent twelve hours credible. From my vantage point as the trier of fact, Mr. Foster's testimony that Mr. Hobbs spent twelve hours of time defending the State Court motions to be an approximation designed to blunt the effect of the motion to strike by Ms. Burns's counsel. While I find Mr. Foster's estimated range of ten to fifteen hours of Mr. Hobbs' time to be more credible, that testimony was stricken.

increased medical bills, he likewise did not itemize or otherwise specifically identify any increased costs resulting from Ms. Burns's actions. The closest Mr. Foster came to quantifying the medical cost associated with medical visits was his statement that medical bills totaled "a couple hundred dollars," after insurance. This vague estimation was not supported by definitive testimony or documentation and, therefore, no actual damages may be awarded with respect to his medical costs.

Finally, Mr. Foster also seeks punitive damages. Individuals injured by a willful violation of the automatic stay may be able to recover punitive damages, in appropriate circumstances. 11 U.S.C. § 362(k). The Code does not define the term "appropriate circumstances" but courts usually require something more than mere willfulness. Heghmann, 316 B.R. at 405. Punitive damages are intended to cause change in a creditor who is found to have acted in "arrogant defiance" of the Code. In re Panek, 402 B.R. at 77 (quoting In re Curtis, 322 B.R. 470, 486 (Bankr. D. Mass. 2005). "Relevant factors are: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." Id. (citing In re Sumpter, 171 B.R. at 845). *See also*, Varela v. Ocasio (In re Ocasio), 272 B.R. 815, 825 (1st Cir. BAP 2002) (*quoting*, In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001) (listing as additional potential facts, "'the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor'").

In this case, I do not find that the filing of the State Court Motions or the Amended Motion to Modify rise to the level of "arrogant defiance." The State Court Motions were premised, at least in part, upon a misapplication of the Collins decision. As soon as the

17

adversary complaint was filed with this Court, and the objection to the State Court Motions was filed in State Court, Ms. Burns withdrew the Motion to Enforce and amended the Motion to Modify. While a mistaken understanding of the law may not be a defense to liability under section 362(k), it is a mitigating factor with respect to punitive damages. Had Mr. Foster established that Ms. Burns and her counsel were aware of the inapplicability of the <u>Collins</u> decision prior to filing the State Court Motions, punitive damages may have been appropriate. Likewise, punitive damages may have been appropriate if Mr. Foster had established that Ms. Burns continues to seek enforcement of the Divorce Judgment, re-division of the marital debt on the Note or elimination of the Pension obligation. However, it appears, based on the sparse record presented to this Court, that Ms. Burns's current efforts in State Court are limited to seeking an adjustment of spousal support. In light of the § 362(b)(2)(A)(ii) exception, and the insufficient information regarding the nature of Ms. Burns's demand for increased spousal support, Mr. Foster did not meet his burden of establishing that Ms. Burns flagrantly disregarded the automatic stay.

Ms. Burns's continued efforts to obtain a modification of the domestic support awarded to her by the Divorce Judgment may well fall within the exception set forth in § 362(b)(2)(A)(ii). By this opinion, however, Ms. Burns is on notice that this Court can conceive of a circumstance in which a request for modification of spousal support may exceed the scope of that exception. In the event that Ms. Burns proceeds with State Court proceedings and does not seek relief from the automatic stay, and this Court later determines those proceedings violated the stay, Mr. Foster may be entitled to punitive damages. What could previously have been considered a mistaken application of the § 362(b)(2)(A)(ii) exception by Ms. Burns could very well, by virtue of this opinion, rise to the level of "arrogant defiance," warranting punitive damages.

## V. Conclusion

Ms. Burns violated the automatic stay. Judgment will enter in favor of Mr. Foster and against Ms. Burns in the amount of $3,000.00, and Ms. Burns's oral motion to dismiss will be denied.

Separate orders shall enter.

Dated: August 4, 2017

/s/ Peter G. Cary
Judge Peter G. Cary
United States Bankruptcy Court